TO BE PUBLISHED IN FEDERAL SUPPLEMENT THIRD

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2:14-CV-132 (WOB-JGW)

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO., ET AL.                                          PLAINTIFFS

VS.

NORCOLD, INC., ET AL.                                          DEFENDANTS

OPINION AND ORDER

BERTELSMAN, District Judge.

I. INTRODUCTION

This case presents the Court with an issue of first impression: would the Kentucky Supreme Court apply the economic-loss doctrine to consumer transactions?  For purposes of this motion, the Court must assume that a used recreational vehicle ("RV") was destroyed by fire when a refrigerator included with the RV at the time of its original purchase ignited, destroying itself, the RV, and the RV's contents.

Plaintiff State Farm insured the RV and is subrogated to the rights of the insured owner, Plaintiff Larry Swerdloff.  Plaintiffs brought suit in Pendleton Circuit Court against Defendant Norcold and its parent company, Thetford, on June 11, 2014.  Norcold removed the action to this Court on July 15, 2014, and subsequently filed a motion for partial summary judgment on October 9, 2014.

## II. FACTS

The parties conveniently have filed a joint stipulation of facts for the purposes of this motion.  Defendants reserve the right to contest these facts if the Court denies the motion.

The following facts are stipulated as true:

1.    A model year 2007 Tiffin Phaeton [RV] owned by Larry Swerdloff and insured by State Farm was destroyed by fire on September 20, 2013 in Pendleton County, Kentucky. Plaintiffs allege that the fire was caused by a defective condition in the RV's refrigerator.

2.    The refrigerator in question was a model 1210IM Norcold gas absorption refrigerator.  It was manufactured by Norcold on or about March 1, 2007.  It was installed into the RV by Tiffin, the RV manufacturer.  The RV was bought by the original purchaser on or about June 20, 2007. The refrigerator originally came with a three-year written express limited warranty. . . .

3.    Mr. Swerdloff bought the RV used in 2012.  The refrigerator came with the RV when Mr. Swerdloff purchased the RV.  The original three year [sic] warranty on the refrigerator expired by its terms prior to Mr. Swerdloff's purchase of the RV.  Mr. Swerdloff had no contact with Norcold when he bought the RV in 2012.

4.    The refrigerator was subject to one Norcold recall, NHTSA recall 10E-049 announced in October of 2010. . . .  The recall repairs were performed at a facility in Florida on or about February 14, 2011. . . .  The RV was owned by the original purchaser at the time . . . .

5.    Plaintiffs allege that the design of the refrigerator was defective and unreasonably dangerous at the time the refrigerator was initially sold, in that the design of the refrigerator presented an unreasonable risk of fire.  Plaintiffs also allege that Norcold's recall activities were negligently conducted, in that its recall campaign did not fully or adequately address the allegedly defective and unreasonably dangerous condition in the refrigerator and did not prevent the fire in question.

6.    As a result of the fire, the RV and its contents were a total loss.  The fire did not cause any personal injuries.  There is no claim for damage to other property outside of the RV.  The damages claimed in this action are $145,193.20 in payments made by State Farm, including Mr.

2

Swerdloff's $250.00 deductible. Additionally, Mr. Swerdloff seeks recovery for damage to other personal property owned by him in the RV at the time of the fire, and consequential damages claimed by Mr. Swerdloff.

7.   The substantive law of Kentucky applies . . . .

(Doc. 11, Stipulation, at 2-3).

### III. ANALYSIS

The *Erie* doctrine requires federal courts to follow the substantive law of the forum state in substantive matters. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). If the law of the state is not clear, federal courts must determine to the best of their ability what the state's appellate courts would hold if confronted with the same issue. 17A James Wm. Moore et al., *Moore's Federal Practice* ¶ 124.22[3] (3d ed. 2014). While such analyses can be fairly straightforward, the issue in the instant case is somewhat complex.

Plaintiff State Farm argues that the proper *Erie* analysis requires the Court to overrule Norcold's motion for partial summary judgment because the Kentucky Supreme Court would not apply the economic-loss doctrine to consumer transactions, although it has applied the doctrine to commercial transactions. *See Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011).

The Court notes that Frumer, Friedman, and Sklaren's *Products Liability* contains an excellent, general discussion of different approaches to the economic-loss doctrine. Louis R. Frumer, Melvin I. Freeman, & Cary S. Sklaren, 2-13 *Products Liability* § 13.07 (2014). Jurisdictions are divided as to the application of the doctrine to consumer transactions, such as that in the instant case:

> The majority of courts apply the economic loss doctrine to consumer purchases as well as business purchases, reasoning that the separate and distinct functions served by tort and contract law apply equally to consumer and business purchasers of defective products. Several courts have found support in § 21 of the Restatement (Third) of Torts: Products Liability, for their decision to apply the economic loss rule to all plaintiffs, including nonbusiness consumers. Other courts focus on the availability of insurance.
>
> Courts holding the economic loss doctrine does not apply to consumers are in the minority.

*Id.* § 13.07[4] (footnotes omitted).

As the parties' highly informative briefs indicate, resolution of the consumer-application issue requires an historical analysis of the most significant Kentucky and federal cases. The Court therefore will discuss those cases in chronological order.

### A.    Historical Overview

A foundational case is *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). In that admiralty case, certain turbine engines malfunctioned, causing damage only to the turbines themselves. *Id.* at 860-61. Although at that time the economic-loss doctrine generally only applied to land-based-product actions, the *East River* Court applied it also to admiralty actions. *Id.* at 868-71. The Court held "that a manufacturer *in a commercial relationship* has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871 (emphasis added).

The Court further observed: "[W]hen a product injures itself, the *commercial user* stands to lose the value of the product, risks the displeasure of its customers . . . , or, as in this case, experiences

costs in performing a service.  Losses like these can be insured." *Id.* (emphasis added).  As the above quotations indicate, the *East River* Court had no occasion to consider whether the economic-loss doctrine should apply to consumer transactions.

Next, and closer to home, is the decision of the Kentucky Court of Appeals in *Falcon Coal Co. v. Clark Equipment Co.*, 802 S.W.2d 947 (Ky. Ct. App. 1991).  In that case, a large, front-end loader allegedly caught fire and destroyed itself.  *Id.* at 947.  The *Falcon Coal* court denied recovery on the following basis:

> Section 402A of the Restatement (Second) of Torts provides in relevant part that "[o]ne who sells *any product* in a defective condition unreasonably dangerous to the user or consumer or *to his property* is subject to liability for physical harm thereby caused to the ultimate user or consumer, or *to his property* . . . ." (Emphasis added.) Our reading of this section, as well as the official comment to it, convinces us that Section 402A is aimed at imposing liability for physical harm caused by an unreasonably dangerous product to the user or his other property, but not for harm caused only to the product itself.  The term "his property" simply does not appear to be intended to embrace within its meaning the term "any product" as those terms are used in Section 402A.  Inasmuch as this section now has been adopted by our highest court as the standard for recovery in strict liability tort cases, and from our reading of this section, it would not permit such recovery in a case like this, we are left to conclude that as it now stands the common law in this jurisdiction does not support the appellant's position [that it could recover in tort where the product damaged only itself].

*Id.* at 948.  *Falcon Coal* of course involved a commercial transaction, but Section 402A of the Restatement also applies by its terms to consumer transactions.

The next case in the Court's chronological survey comes from the United States Court of Appeals for the Sixth Circuit.  In a 1992 case arising out of a commercial transaction, the Sixth Circuit predicted

"that the Kentucky Supreme Court would not allow recovery for purely economic losses in a product liability action based on negligence." *Miller's Bottled Gas, Inc. v. Borg-Warner Corp.*, 955 F.2d 1043, 1050 (6th Cir. 1992).

Another Kentucky case is next. *Real Estate Marketing, Inc. v. Franz*, 885 S.W.2d 921 (Ky. 1994), was a *consumer* case involving subsequent purchasers of a house who sued its builder for structural defects. The Kentucky Supreme Court declined to apply the economic-loss doctrine. *Id.* at 923. Addressing the applicability of the *Falcon Coal* case discussed previously, the *Franz* court observed:

> We do not go so far as the Court of Appeals' opinion in *Falcon* . . . limiting recovery under a products liability theory to damage or destruction of property "other" than the product itself. But we do recognize that to recover in tort one cannot prove only that a defect exists; one must further prove a damaging event.

*Id.* at 926. Of course, the consumer here *can* point to a damaging event on the instant set of facts -- the sudden fire that destroyed his RV.

The Sixth Circuit had occasion to address the economic-loss issue again in *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845 (6th Cir. 2002). In *Mt. Lebanon*, a nursing home operator sued the manufacturer of chemicals used to treat the lumber used in the trusses of a nursing home structure. The Sixth Circuit ultimately held that "there [was] no reason . . . not to follow [its] earlier decision in *Miller's Bottled Gas*" that the Kentucky Supreme Court would apply the economic-loss doctrine to commercial transactions. *Id.* at 849.

6

Before the *Mt. Lebanon* court reached that conclusion, however, it discussed the *Franz* decision and the applicability of the economic-loss doctrine to consumer transactions:

> While the Kentucky Supreme Court agreed with the trial court that the Franzes could not sustain a negligence claim, it did so because there was no "damaging event," not because their claim was barred by the economic loss doctrine. *Id.* at 926. Indeed, in its decision, the Kentucky Supreme Court expressly refused to extend *Franz* to a Kentucky Court of Appeals decision which had adopted the economic loss doctrine. *Id.*
>
> Thus, *Franz* forces us to reconsider our earlier ruling in *Miller's Bottled Gas*. In *Franz*, the Kentucky Supreme Court declined to extend the economic loss rule to an end-consumer's second-hand purchase of a house. *We think, then, that Franz probably answers in the negative the question of whether the economic loss doctrine applies to consumer purchases in Kentucky.*

276 F.3d at 848-49 (emphasis added).   The Sixth Circuit thus has also interpreted the *Franz* decision as a consumer case where the Kentucky Supreme Court declined to apply the economic-loss doctrine.

Finally, the Court arrives at the most recent case: *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). Although *Giddings* involved a commercial transaction, the Kentucky Supreme Court made the following observation about *Franz* and *Falcon Coal*:

> While the manner in which the *Franz* Court would restrict the holding in *Falcon Coal Co.* is not altogether clear, given the immediately succeeding discussion, perhaps the Court intended to suggest that the ban on recovery of economic loss in a product liability action would not apply in the event of a damaging event. *Alternatively, the rather cryptic statement has been read to suggest that Kentucky would not apply the economic loss rule to consumer transactions.*

*Id.* at 737 (emphasis added).   The *Giddings & Lewis* court then made an additional statement about consumer transactions in dicta:

7

> The case *sub judice* does not require us to consider the
> effect of the economic loss rule on consumer transactions
> but, notably, the Restatement (Third) of Torts: Products
> Liability makes no distinction between products produced
> for commercial customers and those produced for consumers.
> *See* Restatement (Third) of Tort § 19(a) (1998) defining
> "product" in relevant part as "tangible personal property
> distributed commercially for use or consumption."

*Id.* at 737 n.5.  The court went on to hold that the economic-loss

doctrine does apply in Kentucky to commercial transactions, even where

the loss occurs from defects in a component part of a product sold as

an integrated whole.  *Id.* at 739-43.

In summary, the economic-loss doctrine finds its roots in cases

involving commercial transactions.  But there exists authority from

the Sixth Circuit stating in dicta that the Kentucky Supreme Court

would not apply the economic-loss doctrine in the context of consumer

transactions, as well as dicta from the Kentucky Supreme Court noting

that the Restatement does not distinguish between consumer and

commercial transactions when it comes to recovery for economic loss.

The authorities are thus in relative equipoise on this question.

**B.   Application**

Making an "*Erie* guess" as to whether the Kentucky Supreme Court

would apply the economic-loss doctrine to consumer transactions

requires consideration of the policies underlying the doctrine,

because the Court has not located -- and the parties have not

identified for the Court -- any decision of the Kentucky Supreme Court

or the Kentucky Court of Appeals addressing this precise issue.

In *Giddings & Lewis*, the Kentucky Supreme Court identified three

relevant policies that militate in favor of precluding recovery for

economic losses in commercial transactions:  "(1) maintain[ing] the

distinction between tort and contract law; (2) . . . protect[ing] parties' freedom to allocate economic risk by contract; and (3) . . . encourag[ing] the party best situated to assess the risk of economic loss, usually the purchaser, to assume, allocate, or insure against that risk." 348 S.W.3d at 739 (quoting *Hoover Universal*, 276 F.3d at 848) (internal quotation marks omitted).

This Court does not believe, however, that the Kentucky Supreme Court would apply to economic-loss doctrine to consumer transactions.

Although the Court recognizes that the manufacturer provides an express warranty to purchasers of its refrigerators, that warranty is limited in both scope and duration. It is reasonably foreseeable that the refrigerators in question could cause serious problems for consumers well beyond the duration of the express warranty. The foreseeable nature of this harm is confirmed by the fact that the manufacturer conducted a recall of the refrigerators *after the express warranty had expired by its terms*.

The Kentucky courts have a strong interest in protecting Kentucky citizens from this kind of foreseeable harm through tort law. The Court thus concludes that the Kentucky Supreme Court would hold that the first policy for application the economic-loss doctrine to commercial transactions weighs against applying the doctrine to consumer transactions.

This Court also believes that the Kentucky Supreme Court would hold that allowing a consumer to sue on a products-liability theory for economic loss does not impinge freedom of contract. As in the overwhelming majority of consumer transactions, even the original

purchaser of Swerdloff's RV likely had little or no chance to allocate economic risk by contract. Norcold decided how much economic risk it was willing to undertake to increase sales of its refrigerator before placing that product into the stream of commerce -- in this case parts and labor for repairs to the refrigerator for at most three years -- and then disclaimed all other express or implied warranties.

Finally, this Court does not believe that the Kentucky Supreme Court would hold that a consumer is in the best position to allocate risk of economic loss. At the time of purchase, a consumer has far less information about a product than its manufacturer. Here, Norcold was best positioned to identify potential problems with its products and cure any defects before placing those products into the stream of commerce. Given this difference, the Kentucky Supreme Court likely would not impose on consumers a blanket requirement to insure every product that they purchase to protect against the possibility that the product might destroy itself.

The Court accordingly holds that the Kentucky Supreme Court would not apply the economic-loss doctrine to consumer transactions. Decisions of the Kentucky Supreme Court, *Franz*, 885 S.W.2d at 926, and the Sixth Circuit, *Hoover Universal*, 276 F.3d at 848-49, bolster this conclusion.[1]

---

[1] The Court notes that other District Judges applying Kentucky law have relied on the Sixth Circuit's statement in *Hoover Universal* that the economic-loss doctrine does not apply to consumer transactions in Kentucky, and at least one Judge did so following the Kentucky Supreme Court's decision in *Giddings & Lewis*. *See, e.g.*, *Rodrock v. Gumz*, No. 4:11-cv-00141-JHM, 2012 WL 1424501, at *2-4 (W.D. Ky. Apr. 24, 2012); *Highland Stud Int'l v. Baffert*, No. 00-261-JMH, 2002 WL 34403141, at *2-4 (E.D. Ky. May 16, 2002).

**C.    Defendant Thetford Corporation**

Defendant Thetford Corporation moved for summary judgment on the basis that it did not manufacture or distribute Plaintiffs' RV or refrigerator.  Counsel for Plaintiffs represented to the Court at oral argument that he sued Thetford only out of an "abundance of caution." Because Plaintiffs do not oppose Thetford's dismissal from this action, the Court grants Defendants' motion to the extent that it seeks Thetford's dismissal as a party.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for partial summary judgment.

Therefore, the Court being advised,

**IT IS ORDERED THAT:**

Defendants' motion for partial summary judgment (Doc. 10) be, and is hereby, **granted in part and denied in part**.  As indicated above, Thetford Corporation is hereby **dismissed** as a defendant.

This 4th day of March, 2015.



Signed By:

_**William O. Bertelsman**_ WOB

**United States District Judge**